UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TROY VAVAL

                Plaintiff,

      -against-                            NOT FOR PUBLICATION
                                                **MEMORANDUM & ORDER**

WARDEN MICHAEL A. ZENK; ASSOCIATE      04-CV-4548 (CBA)
WARDEN L. GERMAN, DEPARTMENT HEAD
S. MIDDLETON; CASE MANAGER N. WALLER
COUNSELOR J. CUFFEE; COUNSELOR SANCHEZ;
P.A. JOHN DOE and UNIT MANAGER JOHN DOE,
in their individual and official capacities

                Defendants.
-----------------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE

      Plaintiff Troy Vaval, who is proceeding *pro se*, has filed suit against defendants, Warden Michael A. Zenk, Associate Warden Luis German, Health Services Administrator Stephanie Middleton, Case Manager Nicole Waller, Counselor James Cuffee, Counselor Robert Sanchez, Unit Team Manager John Doe, and P.A. John Doe (collectively "defendants"), alleging that defendants violated his constitutional rights under the Eighth Amendment by failing to provide proper medical treatment and that the defendants were deliberately indifferent to his medical needs. The defendants have moved to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment under Rule 56. For the reasons set forth below, this Court grants summary judgment for the defendants.

    **I.**      **Background**

      Plaintiff Troy Vaval was transferred to Metropolitan Detention Center in Brooklyn ("MDC-Brooklyn") on February 6, 2003. (Rule 56.1 Statement ("56.1 St.") at ¶ 1; Exh. C,

1

attached to Decl. of Rena Desai ("Desai Decl.").) He remained an inmate there until March 30, 2004. (56.1 St. at ¶ 2; Exh. C to Desai Decl.) Upon arrival at MDC-Brooklyn, it was noted that he had undergone knee surgeries in April and August of 2002. (56.1 St. at ¶ 1; Exh. C to Desai Decl.) During his time at MDC-Brooklyn, Vaval was seen by medical staff on at least seven occasions: March 3, April 4, July 29, September 11, September 12, and October 24, 2003, and February 3 and 10, 2004. (56.1 St. at ¶ 3; Exh. B to Desai Decl.) On four of those occasions, Vaval discussed his knee problems with the medical staff. (56.1 St. at ¶ 4; Exh. B to Desai Decl.) On each of these occasions, members of the medical staff provided Vaval with advice on preventive measures to avoid knee surgery, gave Vaval work and duty passes, and prescribed him pain killers. (56.1 St. at ¶ 4; Exh. B to Desai Decl.) In addition, on April 4, 2003, the medical staff requested that Vaval be allowed to use high cut sneakers and plastic knee braces from home. (Exh. B to Desai Decl.)

On May 13, 2003, Vaval filed a BP-8 form, an Inmate Request for Informal Resolution, in which he requested to receive plastic knee braces and high cut sneakers from home. (56.1 St. at ¶ 5; Exh. I to Desai Decl.) In response, Vaval was informed that any orthopedic appliance or device, such as knee braces or special shoes, had to be supplied by the medical staff, and that such devices could not be sent from home. (56.1 St. at ¶ 6; Exh. I to Desai Decl.) On June 4, 2003, Vaval filed a BP-9, a Request for Administrative Remedy, in which he again requested knee braces and high cut sneakers. (56.1 St. at ¶ 7; Exh. D to Desai Decl.) In a letter dated October 29, 2003, Warden Zenk informed Vaval that he had been granted permission to receive knee braces from home, but that the knee braces had been returned by the mail room. Warden Zenk also informed Vaval that the Health Services Administrator had informed Vaval that he

2

was eligible to purchase "3/4 sneakers" from the commissary. (56.1 St. at ¶ 8; Exh. D to Desai Decl.)

Vaval appealed the October 29, 2003 decision by filing a BP-10, a Regional Administrative Remedy Appeal, on November 17, 2004, with the Northeast Regional Office of the Bureau of Prisons ("BOP"). Vaval claimed that the prison staff had been indifferent to his medical needs, that he had only received an "Aid's bandage" for his knees, that the sneakers available at the commissary did not provide sufficient ankle support, and that his knee braces from home had been rejected by the mail room. He also requested to see a specialist. (56.1 St. at ¶ 10; Exh. G to Desai Decl.) Meanwhile, on December 5, 2003, Vaval received soft knee braces for both knees from Health Services Administrator Stephanie Middleton. (56.1 St. at ¶ 10; Declaration of Stephanie Middleton ("Middleton Decl.") at ¶ 2; Exh. B to Desai Decl.) On December 17, 2003, the Regional Office responded by upholding the Warden's decision. The Regional Office informed Vaval that the Warden had properly told him that he can purchase 3/4 sneakers from the commissary, that he had received soft knee braces on December 5, and that if he wished to see a specialist, he was required to sign up for regular sick call so that the health services staff could first evaluate whether or not it was necessary to see a specialist. The Regional Office also informed Vaval as to how to appeal that decision. (56.1 St at ¶ 11; Exh. G to Desai Decl.)

In a letter dated January 29, 2004, Vaval informed the Office of the General Counsel that he did not receive the response to his BP-10 request until January 9, 2004 and requested an extension of time in which to appeal that decision. (Pl. Reply Br. at 4, Exh. B attached thereto.) Vaval's BP-11 appeal was rejected as untimely and Vaval was instructed that he would have to

3

provide letter verification from a BOP staff official saying that his untimely filing was not his fault. (56.1 St. at ¶ 12; Exh. H to Desai Decl.) Vaval failed to re-file his BP-11 and did not provide any staff verification that the original untimely filing of his BP-11 was not his fault. (56.1 St. at ¶ 13.) In addition, Vaval has not filed a notice of a tort claim with the Bureau of Prisons. (Id. at ¶ 15.) Vaval filed the instant action on October 28, 2004.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999). The moving party bears the burden of establishing the absence of a genuine issue of material fact for trial. Baisch v. Gallina, 346 F.3d 366, 371 (2d Cir. 2003).

The Court is required to view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and must construe a *pro se* plaintiff's claims liberally in deciding the motion for summary judgment, see Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO, 180 F.3d 31, 36 (2d Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Nevertheless, the nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial."

4

Fed. R. Civ. P. 56(e). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

Under the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Eastern District of New York, summary judgment may be granted in a *pro se* case when the plaintiff has received adequate notice that failure to respond may result in dismissal of the case and the court determines that the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law. E.D.N.Y. Civ. R. 56.2; Fed. R. Civ. P. 56(e); see Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). In this case, Vaval received notice informing him of the nature and consequences of summary judgment, as required by Vital, 168 F.3d at 620–21. Although Vaval did not file a Rule 56.1 statement, he did submit a memorandum responding to the defendant's assertions regarding his failure to exhaust his administrative remedies. Vaval did not respond to the defendant's other arguments.

### B. Exhaustion of Administrative Remedies

Vaval's claim is not actionable, as he has failed to exhaust the administrative remedies that were available to him. Section 803(d) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Ortiz v. McBride, 380 F.3d 649, 656 (2d Cir. 2004). "Requiring

exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. ___, 127 S.Ct. 910, 914 (2007). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." Id. at 914-15.

All inmates confined in Bureau of Prison institutions must seek both informal and formal review of complaints relating to any aspect of their confinement through a four-step process referred to as the "Administrative Remedy Program." 28 C.F.R. §§ 542.10-542.19; see Porter v. Nussle, 534 U.S. 516, 532 (2002) (holding that "the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Under the Administrative Remedy Program, the inmate must first present his or her concern informally to a staff member, who must attempt to resolve the concern. See 28 C.F.R. § 542.13(a). If the issue cannot be resolved informally, the inmate is required to file an Administrative Remedy Request by submitting a BP-9 form to the staff member designated by the Bureau of Prisons, generally the warden. See id. at §§ 542.13(a), 542.14(a), (c)(4). If dissatisfied with the warden's response, the inmate may appeal to the Regional Director by filing a BP-10 form within twenty days of the date the warden signs the response. See id. at § 542.15(a). If dissatisfied with the Regional Director's response, the inmate must file an appeal with the Office of General Counsel by submitting a BP-11 form within thirty days of the Regional Director's response. See id. at § 542.15(a).

In this case, Vaval failed to submit a timely BP-11. (56.1 St. at ¶¶ 12, 13). A response to Vaval's BP-10 request was issued on December 17, 2003. (Id. at ¶ 11.) Vaval had thirty days,

until January 17, 2004, to file an appeal on a BP-11 form. See 28 C.F.R. § 542.15(a). In a letter dated January 29, 2004, Vaval informed the BOP that he did not receive the response to his BP-10 request until January 9, 2004 and requested an extension of time in which to appeal that decision. (Pl. Reply Br. at 4, Exh. B attached thereto.) Vaval's BP-11 appeal was rejected as untimely and Vaval was instructed that he would have to provide letter verification from a BOP staff official saying that his untimely filing was not his fault. (56.1 St. at ¶ 12; Exh. H to Desai Decl.) However, Vaval never attempted to provide staff verification explaining that the untimely filing of the original was not his fault. As such, Vaval failed to exhaust his administrative remedies before bringing suit in this Court.

When an inmate has failed to exhaust his administrative remedies, the Court must ask (1) whether administrative remedies were in fact "available" to the prisoner; (2) whether the defendants may have forfeited affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting inmate's exhaustion of remedies estop the defendants from raising failure to exhaust as a defense; and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). In the instant case, administrative remedies were "available" to Vaval at the outset; that is, the prison provided grievance procedures that inmates claiming deliberate indifference could utilize. We therefore cannot say that administrative remedies were originally unavailable to Vaval. In addition, Vaval has not asserted that the defendants forfeited the affirmative defense of non-exhaustion by failing to raise it, or that the defendants' actions estop them from asserting

the exhaustion defense.[1]  See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004).

Finally, Vaval has not shown that "special circumstances" justify his failure to exhaust his administrative remedies.  Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004).  In his papers before this Court, Vaval states that the mail room at MDC-Brooklyn does not record or log incoming legal mail and that he did not receive his response to his BP-10 request until January 9, 2004, twenty-four days after it was mailed.  However, even if this were the case, Vaval would have had an additional week from the date of receipt of the BP-10 response in which to timely file a BP-11 form.  Although Vaval has provided this Court with a copy of a letter sent to the BOP on January 29, 2004, in which he requested an extension of time to file his BP-11 appeal, he has not explained why this letter was sent after the expiration of the time in which to file his BP-11 appeal.  Furthermore, Vaval has provided no explanation or excuse why, after his BP-11 was rejected as untimely, he did not attempt to refile his appeal with the BOP or to provide staff verification that the untimeliness was not his fault.  Accordingly, Vaval has not shown that "special circumstances" excuse his failure to exhaust the administrative remedies available to him, such that summary judgment must be granted for the defendants.

    **C.**    **Sovereign Immunity**

The defendants also contend that the Court must dismiss Vaval's claims to the extent that they are asserted against the defendants in their official capacities because such claims are barred by sovereign immunity.  A lawsuit against a federal employee acting in his or her official capacity is in essence an action against the United States itself.  See Kentucky v. Graham, 473

---

[1] Vaval states in his reply papers that "there may be a conspiracy (by staff) to conceal their bad acts," he does not assert what "bad acts" corrections officers may have engaged in, other than failing to keep a log of legal mail, as described *infra*.

U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The United States, however, "is immune from suit save as it consents to be sued." United States v. Testan, 424 U.S. 392, 399 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); Monti v. United States, 223 F.3d 76, 78 (2000) ("The doctrine of sovereign immunity prevents suits against the United States unless the United States has waived the immunity."). Although the United States has waived sovereign immunity with respect to certain kinds of claims, see, e.g., Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, it has not waived immunity with respect to the constitutional claims that Vaval asserts.[2] Thus, Vaval may not pursue these claims against the defendants in their official capacities, or against the United States.

Vaval may, however, pursue his claims against the defendants in their personal capacities pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Bivens authorizes suits for monetary damages against federal officials for constitutional violations, such as the Eighth Amendment violations that Vaval asserts. Such suits are asserted against the defendants in their personal capacities and not against the defendants in their official capacities or against the United States. See FDIC v. Meyer, 510 U.S. 471, 485 (1994) ("[W]e implied a cause of action against federal officials in Bivens in part *because* a direct action against the Government was not available." (emphasis in original));

---

[2] Vaval makes no reference to the Federal Tort Claims Act ("FTCA") in his complaint or his reply papers, nor has he named the United States as a defendant. Furthermore, even if the Court were to read Vaval's complaint broadly to include an FTCA claim, such a claim would be dismissed, as Vaval has not exhausted his administrative remedies by filing a notice of a tort claim with the BOP. See McNeil v. United States, 508 U.S. 106, 107 (1993) (citing 28 U.S.C. § 2675(a)); see also Owusu v. Fed. Bureau of Prisons, No. 02 Civ. 0915, 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003) (noting that the exhaustion procedures for a Bivens claim and an FTCA claim "differ, and the fulfillment of one does not constitute satisfaction of the other.")

Armstrong v. Sears, 33 F.3d 182, 185 (2d Cir. 1994) (noting Bivens allows suit against federal officials in personal but not official capacities).

Since the caption of Vaval's complaint asserts that it presents claims against each defendant "in their Individual and Official Capacity", the Court construes Vaval's complaint as an attempt to set forth a Bivens action against the named defendants in their personal capacities.

### D. Bivens action

In order to establish a Bivens claim, a plaintiff must show that there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). Failure to allege that defendants "were directly and personally responsible for the purported unlawful conduct" renders a complaint "fatally defective" on its face. Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations omitted). The only defendants named individually in the complaint's allegations are "Officer Sanchez" and "warden Zenk." (Compl. at ¶¶ 15, 18.) Accordingly, Vaval has failed to state a claim with respect to the remainder of the defendants. See Iwachiw v. N.Y. State Dep't of Motor Vehicles, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004) (citing Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.")).

Furthermore, the allegations with respect to defendants Zenk and Sanchez are insufficient to establish "personal participation" in the allegedly illegal conduct. With respect to defendant Zenk, the complaint's sole allegation is that "[d]ue to obstacles constantly being presented . . .

warden Zenk . . . ha[s] been deliberately indifferent to [Vaval's] serious medical needs." (Compl. at ¶ 18.) With respect to defendant Sanchez, the complaint's sole allegation is that Vaval informed defendant Sanchez of "the pain and suffering [he] experienced as result of the medical staff's failure to schedule plaintiff for examination and treatment." (Compl. at ¶ 15.) The complaint does not allege that either Zenk or Sanchez personally prevented Vaval from receiving medical care, was grossly negligent in supervising subordinates who committed wrongful acts, or exhibited deliberate indifference by failing to act on information indicating unconstitutional acts were occurring. Id. at 154.

### E. No "deliberate indifference" to medical needs

Finally, even if Vaval had exhausted his administrative remedies, and had stated a viable Bivens action claim, it does not appear as though Vaval has established a violation of his Eighth Amendment rights. In order "to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Deliberate indifference requires both that, the alleged deprivation was, in objective terms, "sufficiently serious," and that the defendant acted "with a sufficiently culpable state of mind." Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). An official acts with the requisite deliberate indifference when that official "knows of and disregards an *excessive risk* to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). In this case, Vaval has not shown "deliberate indifference to his serious medical needs."

11

Vaval's complaint alleges that defendant failed to provide him with knee braces and high cut sneakers. (Complaint at ¶¶ 16, 20-21.) In particular, it appears that Vaval wished to receive plastic knee braces and high-top sneakers sent from his home. Although the warden granted permission for Vaval to receive plastic knee braces from home, that package was rejected by the mail room. In addition, the warden did not give Vaval permission to receive high cut sneakers from home. However, the BOP provided Vaval with soft knee braces and allowed him to purchase "3/4 sneakers" from the commissary. In addition, Vaval was seen by BOP medical staff on at least seven occasions during his stay at MDC-Brooklyn. (56.1 St. at ¶ 3.) On four of those occasions, Vaval discussed his knee condition with the medial staff, and on each of those occasions was prescribed pain-killers, given work and duty passes, or instructed on proper preventative measures to alleviate his pain. (56.1 St. at ¶¶ 3, 4.) Accordingly, given the attention given to Vaval's medical needs, it cannot be said that the defendants knew of and disregarded an excessive risk to Vaval's safety or otherwise acted with deliberate indifference to Vaval's medical needs.

## CONCLUSION

For the reasons set forth above, this Court grants summary judgment for the defendants. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 13, 2007

Carol Bagley Amon
United States District Judge